IN THE MATTER OF THE APPEAL OF STRONG TIRE SERVICE, INC., GREENSBORO, NORTH CAROLINA

No. 60

(Filed 10 May 1972)

1. **Taxation § 25— ad valorem taxes — unlisted property — listing by tax supervisor — assessment by county commissioners**

   When county tax authorities discover that property subject to ad valorem taxes has not been listed, it is the duty of the tax supervisor to list such property in the name of the taxpayer; and, in such case, the county commissioners may assess the previously unlisted property for the preceding years, not exceeding five, during which it escaped taxation and for the current year, and may assess a penalty for the taxpayer's failure to list it in accordance with statutory requirements. G.S. 105-331.

2. **Taxation § 25— understatement of inventory — failure to list portion of inventory — assessment by county commissioners**

   Where inventories were identified and listed only by value on ad valorem taxation forms, the taxpayer's gross understatement of the value of its inventories, as shown by the taxpayer's records, for each of the years 1963-1968 constituted a failure to list a portion of its inventories for those years; consequently, the board of county commissioners was authorized by G.S. 105-331 to assess taxes with penalties for each of those years on the difference between the amount reported on the tax forms as inventory and the value of inventory shown by the taxpayer's records.

APPEAL by Guilford County from *Exum, J.,* at January 7, 1971 Session of GUILFORD Superior Court, docketed and argued as No. 43 at Fall Term 1971.

Strong Tire Service, Inc., hereafter called taxpayer, listed tangible personal property for ad valorem taxation by Guilford

---

In re Tire Service

---

County for the years 1963, 1964, 1965, 1966, 1967 and 1968 on the "Business Property Abstract" forms.

The following is the pertinent part of the taxpayer's completed form for 1963.

Page 2      NOTE: Read Instructions on Page 4 Before Preparing This Abstract

SECTION A — List in this section ALL REAL AND TANGIBLE PERSONAL PROPERTY located or having taxable situs in township listed on the cover page of this abstract, and on which you will pay ad valorem taxes.

| | JANUARY 1, 1962 | | JANUARY 1, 1963 | | For Tax Office Use |
| | Amount | Total | Amount | Total | |
|---|---|---|---|---|---|
| ① INVENTORIES (Merchandise, work-in-process, finished goods, supplies and other like property ............ | xxxxxxxxxxxx | $ 23,040.50 | xxxxxxxxxxxx | $ 24,327.71 | |

The following is the pertinent part of the taxpayer's completed form for 1966.

Page 2      NOTE: Read Instructions on Page 4 Before Preparing This Abstract

SECTION A — List in this section ALL REAL AND TANGIBLE PERSONAL PROPERTY located or having taxable situs in township listed on the.cover page of this abstract, and on which you will pay ad valorem taxes.

| | JANUARY 1, 1965 | | JANUARY 1, 1965 | | For Tax Office Use |
| | Amount | Total | Amount | Total | |
|---|---|---|---|---|---|
| ① INVENTORIES (Merchandise, work-in-process, finished goods, raw materials, supplies and other like property..... | 100% of Cost | $ 24,889.74 | 100% of Cost | $25,214.48. | 1 7 6 6 0 . |

Except for the differences in the figures, the completed forms for 1964 and 1965 are the same as the completed 1963 form. Except for the differences in the figures, the completed forms for 1967 and 1968 are the same as the completed form for 1966. In the completed forms for 1966-68, these words and figures appear below the heading "Amount": "100% of Cost." A series of x's appears in the corresponding spaces in each of the completed returns for 1963-65.

An examination of the taxpayer's records in 1968 disclosed that its inventories on the first day of January of each of the years 1963-68 had a value greatly in excess of that reflected in the taxpayer's returns. Thereupon, the tax supervisor listed in the taxpayer's name inventories for each of the years 1963-68 in the amount of the difference between the amounts specified in the taxpayer's returns and the amounts of the taxpayer's inventories as shown by its records.

On October 7, 1968, the Guilford County Board of Commissioners approved a tax assessment with penalties and interest, based on authority for the assessment of unreported tangible personal property conferred by G.S. 105-331. The taxpayer appealed the County Board's decision to the State Board of Assessment.

---

In re Tire Service

---

The appeal came on for hearing before the State Board of Assessment, sitting as the State Board of Equalization and Review (State Board), on September 17, 1969. It was there stipulated that the taxpayer's actual inventories according to its records, the amounts reported to the county and the differences between these two figures for the years 1963-68 are as follows:

|                          | 1963    | 1964    | 1965    |
|--------------------------|---------|---------|---------|
| Inventories per records  | 53,033  | 56,032  | 70,463  |
| Amounts reported         | 24,327  | 23,120  | 24,890  |
| Differences              | 28,706  | 32,912  | 45,573  |

|                          | 1966    | 1967    | 1968    |
|--------------------------|---------|---------|---------|
| Inventories per records  | 79,511  | 95,785  | 101,560 |
| Amounts reported         | 25,214  | 25,982  | 27,541  |
| Differences              | 54,297  | 69,803  | 74,019  |

Each of the abstracts was signed by a named individual who describing himself as an officer or agent of the taxpayer, solemnly swore "that the above listing of real and tangible personal property [was] a full, true and complete list as abstract indicates." There was no evidence as to the method, if any, employed by the taxpayer to arrive at the reported inventory figures. The percentages of the taxpayer's actual inventories reported to the county was: 45.87% for 1963; 41.26% for 1964; 35.32% for 1965; 31.71% for 1966; 27.13% for 1967; and 27.12% for 1968.

The State Board, having found the facts stated above, concluded "that the abstracts filed by the appellant for the years under appeal were not complete listings of all property owned by the appellant as of the assessment dates. . . . that for each of the years under appeal, to wit: 1963, 1964, 1965, 1966, 1967 and 1968, the appellant failed to list that portion of its inventory represented by the difference between the amount shown by its records and the amount reported to Guilford County as inventory. . . . that the appellant filed the abstracts with full knowledge that they did not accurately reflect its inventories for the years under appeal." Thereupon, the State Board ordered "that the action of the Guilford County Board of Commissioners in assessing taxes and penalties on the inventories not listed

In re Tire Service

by the appellant for the years 1963 through 1968 is hereby sustained."

After hearing in the Superior Court, upon the taxpayer's petition for review of the decision of the State Board, Judge Exum entered judgment in favor of the taxpayer which concluded as follows:

"(1) The taxpayer in question did list its *Inventories'* for the years 1963-1968;

"(2) That G.S. 105-331 entitled DISCOVERY AND ASSESSMENT OF PROPERTY NOT LISTED DURING THE REGULAR LISTING PERIOD does not apply in this instance; and

"(3) That although the facts found by the State Board of Assessment are supported by the evidence. the FINAL DECISION OF THE STATE BOARD OF ASSESSMENT including the CONCLUSION, DECISION AND ORDER OF THE STATE BOARD OF ASSESSMENT entered September 17, 1969, is in error as a matter of law, in that it is not supported by the facts found, is in excess of the statutory authority of the Board, is arbitrary and capricious and is prejudicial to substantial rights of the taxpayer.

"IT IS NOW, THEREFORE, ORDERED, ADJUDGED AND DECREED that the FINAL DECISION OF THE STATE BOARD OF ASSESSMENT be and the same is hereby reversed."

Guilford County excepted and appealed. The case was transferred from the Court of Appeals for initial appellate review by the Supreme Court under our general order of July 31, 1970, entered pursuant to G.S. 7A-31(b)(4).

*W. B. Trevorrow and Ralph A. Walker for appellant Guilford County.*

*Frazier, Frazier & Mahler, by Harold C. Mahler and Spencer W. White, for appellee Strong Tire Service, Inc.*

*Attorney General Morgan and Deputy Attorney General Benoy for North Carolina State Board of Assessment, amicus curiae.*

*John T. Morrisey, Sr., for North Carolina Association of County Commissioners, amicus curiae.*

BOBBITT, Chief Justice.

**[1]** When county tax authorities discover that property subject to ad valorem taxes has not been listed, it is the duty of the tax supervisor to list such property in the name of the taxpayer; and, in such case, the county commissioners may assess the previously unlisted property "for the preceding years during which it escaped taxation, not exceeding five, in addition to the current year," and may assess a penalty for the taxpayer's failure to list it in accordance with statutory requirements. G.S. 105-331.

**[2]** In reversing the State Board, Judge Exum held the provisions of G.S. 105-331 do not apply to the present factual situation. He accepted taxpayer's contention that, although the figures under "Total" did not reflect the true value of taxpayer's inventories as shown by its records, taxpayer's failure to state the true value thereof may not be considered a failure to list a portion of its inventories.

*Spiers v. Davenport*, 263 N.C. 56, 138 S.E. 2d 762 (1964), and *Wolfenden v. Commissioners*, 152 N.C. 83, 67 S.E. 319 (1910), cited and stressed by taxpayer, hold that the county commissioners have no authority to raise the appraised value of *specific listed property* after final adjournment of the county board of equalization and review and the assessment and payment of the taxes thereon. Specific parcels of real estate were involved in *Spiers*. Specific mortgage notes were involved in *Wolfenden*. The statutory provisions governing the procedure in such cases are discussed by Justice Rodman in *Spiers* and need not be repeated here. The question before us is whether taxpayer *listed all of its inventories* for the years 1963-68 or only a portion thereof.

Included in the record before us are pages 1, 2 and 3 of each of the abstracts for 1963-68. As indicated in our preliminary statement, there appears at the top of page 2 the following: "NOTE: Read Instructions on Page 4 Before Preparing This Abstract." However, page 4 (presumably the reverse side of page 3) is not before us.

G.S. 105-306 provides in part: "Each taxpayer or person whose duty it is to list property for taxation shall file with the proper list taker a tax list setting forth, as of the day on which property is assessed, the following information: . . . . (14) The

amount and value of merchandise, manufactured goods, or goods in the process of manufacture. This subdivision is intended to include all tangible personal property whatever held for the purpose of sale or exchange or held for use in the business of the taxpayer."

G.S. 105-294 provides in part: "All property, real and personal, shall as far as practicable be appraised or valued at its true value in money. The intent and purpose of this section is to have all property and subjects of taxation appraised at their true and actual value in money, in such manner as such property and subjects of taxation are usually sold, but not by forced sale thereof; and the words 'market value,' 'true value,' or 'cash value,' whenever used in this chapter, shall be held to mean for the amount of cash or receivables the property and subjects can be transmuted into when sold in such manner as such property and subjects are usually sold."

The abstract form permitted taxpayer to list its inventories in bulk. Since neither itemization nor identification was required, the extent or "Amount" of taxpayer's inventory was shown only by the figure entered under the word "Total." Thus, taxpayer was permitted to identify and list its inventories by value rather than by description. In the absence of special circumstances, it was contemplated that the reported value of the inventory would be its value as shown by taxpayer's records.

In the abstracts for 1966, 1967 and 1968, under the word "Amount," which precedes the word "Total," are the printed words "100% of Cost." Since page 4 (instructions to be read before preparing the abstract) was not included in the record, whether page 4 of the abstracts for 1963, 1964 and 1965 contained instructions pertinent to the listing of inventories cannot be answered from the record before us.

Taxpayer stipulated that the value of its inventories as shown by its own records as of January 1 of each of the years 1963-68 greatly exceeded the amounts shown as totals on its six abstracts. No attempt was made to justify the figures in its abstracts. In gist, taxpayer admits its inventories were greatly undervalued but asserts that the failure of the tax supervisor to challenge its figures before the final session of the Board of Equalization and Review clears it from obligation to pay additional taxes.

In re Tire Service

Notwithstanding the explicit provisions in the abstracts for 1966, 1967 and 1968 to the effect that the amount of inventories was to be "100% of Cost," each year during the period 1963-68 the percentage shown under "Total" of the true value of taxpayer's inventories as shown by its own records continued its downward course. Taxpayer's contention that in each of the years 1963-68 it listed its entire inventories for ad valorem taxation is unimpressive. When inventories are identified and listed only by value, gross understatement of value is evidence that *all* of taxpayer's inventories were not listed.

We think the evidence was sufficient to support the State Board's finding (erroneously set forth as a conclusion of law) that taxpayer "failed to list that portion of its inventory represented by the difference between the amount shown by its records and the amount reported to Guilford County as inventory," and that taxpayer "filed the abstracts with full knowledge that they did not accurately reflect its inventories" for the years 1963-68.

G.S. 105-331, -306 and -294, as codified in Volume 2D of the General Statutes (Replacement 1965), are applicable to the taxation periods involved in this case. They clearly require taxpayer to pay taxes on the full value of its inventories. We note that these statutory provisions were superseded by Chapter 806 of the Session Laws of 1971.

The judgment of the Superior Court is reversed; and the cause is remanded for the entry of a judgment affirming the decision of the State Board.

Reversed and remanded.